JM:JPN

# M-10-730

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
UNITED STATES OF AMERICA

    -against-

SETH LOWENSTEIN,
    also known as
    "Chaim Lowenstein,"

           Defendant.

--------------------------------X

TO BE FILED UNDER SEAL

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF
APPLICATION FOR
ARREST WARRANT

(Title 18, U.S.C., §§
1341 and 3551 et seq.)

EASTERN DISTRICT OF NEW YORK, SS:

        MARIA ALBRIGHT, being duly sworn, deposes and says that
she is a United States Postal Inspector with the United States
Postal Inspection Service, duly appointed according to law and
acting as such.

        In or about and between October 2005 and December 2005,
both dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendant SETH
LOWENSTEIN, also known as "Chaim Lowenstein," knowingly and
intentionally devised a scheme and artifice to defraud, and
obtained money and property by means of materially false and
fraudulent pretenses, representations and promises, and for the
purpose of executing such scheme and artifice, did place and
cause to be placed in a post office and authorized depository for
mail matter, false documents to be sent and delivered by the
United States Postal Service.

(Title 18, United States Code, Sections 1341 and 3551 et seq.)

The source of your deponent's information and the grounds for her belief are as follows:

1.    I am a United States Postal Inspector with the United States Postal Inspection Service and have been so employed for approximately six years. I am currently assigned to the Fraud Team which investigates allegations of fraud involving the United States Postal Service. In this position, I have conducted surveillance, interviewed witnesses, reviewed extensive documents obtained through the service of subpoenas, and used other investigative techniques to secure relevant information for use in criminal prosecutions.

2.    The facts set forth in this affidavit were developed as a result of an investigation conducted by me and other law enforcement officers, interviews of witnesses, conversations with other law enforcement agents and the review and analysis of documents and records relating to the investigation.[1]

---

[1] Because the purpose of this affidavit is limited to setting forth probable cause to arrest, I have not set forth every fact of which I am aware pertaining to this investigation. Where I relate statements, conversations, and actions of others, those statements, conversations, and actions of others are related in substance and in part, except where otherwise indicated.

2

**BACKGROUND**

## A.    The Rebate Program

3.    During the time period of the scheme, 3Com Inc.
(hereinafter referred to as "3Com") was a large manufacturer of
office and electronic products and supplies, and its corporate
headquarters were located in Marlborough, Massachusetts.  During
the time period of the scheme, 3Com operated a program
(hereinafter referred to as the "3Com Rewards Program") through
which it paid rebates to sales representatives of resellers of
3Com office and electronic products.  3Com used the term
"reseller" to refer to companies or entities that purchased
products from 3Com and, in turn, sold those products to retail
customers.  3Com referred to retail customers as "end users."
The 3Com Rewards Program allowed sales representatives of
resellers to receive rebates for selling certain 3Com products to
end users.

4.    To be eligible for the 3Com Rewards Program, a
sales representative had to register with 3Com and authorize 3Com
to open a debit card (hereinafter referred to as the "Rebate
Card") in the sales representative's name.  3Com distributed
Rebate Cards to the sales representatives who registered with
3Com as part of the rebate program.

5.    To submit a claim for a rebate in connection with
the 3Com Rewards Program, a sales representative had to provide

3

information to 3Com about each rebate-eligible 3Com product that
he or she sold to an end user.  That information had to be
submitted to 3Com electronically over the Internet via the 3Com
Rewards Program website.

6.   Among other things, a sales representative had to
provide 3Com with the invoice number of the end user's invoice
(hereinafter referred to as the "End User Invoice").  The term
"End User Invoice" referred to the sale invoice provided by a
reseller to an end user in connection with the end user's
purchase of a 3Com product.

7.   To submit a claim for a rebate, a sales
representative also had to mail a copy of each End User Invoice,
as well as specific information obtained from the 3Com Rewards
website, to 3Com's office in Grand Rapids, Minnesota.   The
information obtained from the 3Com website consisted of a one
page summary of the rebate claim that contained the sales
representative's name as well as the End User Invoice number
associated with the claim.

8.   3Com paid rebates in connection with the 3Com
Rewards Program by depositing funds directly into the account
associated with the sales representative's Rebate Card.

### THE FRAUDULENT SCHEME

9.   During the time period of the scheme, the
defendant SETH LOWENSTEIN registered with 3Com as a purported

4

sales representative in connection with the 3Com Rewards Program. Instead of using his own name, LOWENSTEIN registered under the name of "Chaim Lowenstein." Using the name "Chaim Lowenstein," LOWENSTEIN submitted rebate requests for fictitious or nonexistent sales of 3Com products.  In connection with this scheme, LOWENSTEIN mailed fraudulent End User Invoices from Brooklyn, New York to 3Com's office in Grand Rapids, Minnesota.

          10.   For example, on or about November 23, 2005, LOWENSTEIN mailed two End User Invoices (hereinafter referred to as the "November Invoices") to the 3Com's Grand Rapids, Minnesota office via a Priority Mail envelope (hereinafter referred to as the "November 2005 Mailing").  The return address on the November 2005 Mailing listed "WebCom247" and the address of 1053 57 Street, Ste. 3, Brooklyn, NY 11219 (hereinafter referred to as the "1053 57 Street Address").

          11.   The November Invoices were purportedly submitted by "Chaim Lowenstein," who, according to 3Com's records, had registered in connection with the 3Com Rewards Program as a sales representative of "WebCom247," a purported 3Com reseller.

          12.   The letterhead on the November Invoices listed WebCom247 and the 1053 57 Street Address.

          13.   The November Invoices indicated that WebCom247 had sold 3Com electronic products, valued at over $30,000, to Esker,

5

Inc. and listed Esker, Inc.'s address as 100 East 7th Avenue,
Stillwater, Oklahoma.

14.   One of the November Invoices indicated that a
portion of the 3Com computer products purportedly sold to Esker,
Inc. had been shipped by WebCom247 to Esker Inc.'s office in
Connecticut.

15.   On or about December 14, 2005, 3Com paid "Chaim
Lowenstein" a rebate in the amount of $1,100 in connection with
the November Invoices.   3Com paid the rebate by crediting the
account associated with the Rebate Card issued to "Chaim
Lowenstein."

16.   The November Invoices were fraudulent.   An
employee of Esker Inc. has informed me, in sum and substance,
that WebCom247 is not a vendor of Esker, Inc. and is not listed
in Esker, Inc.'s accounts payable system.   Moreover, Esker, Inc.
has no record of ever doing business with any vendor located in
the 11219 zip code, and it has no record of any payment made to
"WebCom247."

17.   The Esker, Inc. employee also informed me, in sum
and substance, that the computer products listed on the November
Invoices are not products that Esker, Inc. would have purchased
or used in the course of its business.   The employee also
informed me that Esker, Inc. has never had an office in
Connecticut.

6

18.   3Com records indicated that, during the time period of the scheme, the defendant SETH LOWENSTEIN, using the name "Chaim Lowenstein," submitted multiple rebate claims to 3Com in connection with the 3Com Rewards Program.  I have communicated with the end users listed on End User Invoices submitted in connection with those claims, and as a result of those communications, I have determined that the purported sales referenced in the rebate claims submitted by "Chaim Lowenstein" also were ficticious.

19.   The estimated total loss associated with LOWENSTEIN's conduct involving the 3Com Rewards Program is $24,240.  Additionally, records obtained from 3Com indicate that the defendant SETH LOWENSTEIN engaged in additional fraudulent conduct in connection with another 3Com rebate program.  Our investigation of that conduct is ongoing, and the estimated loss associated with that conduct substantially exceeds the estimated loss associated with the 3Com Rewards Program.

A.   **The Defendant Used the Alias "Chaim Lowenstein"**

20.   On or around November 13, 2008, I conducted surveillance at the 1053 57 Street Address.  During my surveillance, I observed a white male exit the 1053 57 Street Address.  The white male then got into the driver's seat of a white, four-door Dodge automobile that was parked nearby, and drove away.  I subsequently determined that the white Dodge

7

automobile, which had a Florida license plate, was registered to the defendant SETH LOWENSTEIN, and I determined, based upon my review of known photographs of LOWENSTEIN, that the man that I observed was LOWENSTEIN.

21.   Records obtained from the Department of Motor Vehicles (hereinafter referred to as the "DMV") for the State of Florida indicated that the defendant SETH LOWENSTEIN resided at 10920 Baymeadows Road, #27,154, Jacksonville, FL 32256-4570.

22.   The residential address listed for the defendant SETH LOWENSTEIN in the DMV records is actually a mail drop operated by PakMail, a commercial mail receiving agency or "CMRA."

23.   As a CMRA, PakMail is authorized to receive mail and packages on behalf of customers.  PakMail assigns each customer a specific mail box number.  PakMail records indicated that the defendant SETH LOWENSTEIN became a customer of PakMail in or about August 2007, and that PakMail assigned LOWENSTEIN mail box number 154.

24.   Records obtained from PakMail indicated that the defendant SETH LOWENSTEIN and "Chaim Lowenstein" are the same person.  In fact, the application submitted by LOWENSTEIN to PakMail to authorize PakMail to receive mail on LOWENSTEIN's behalf (hereinafter referred to as the "PakMail Application")

8

identifies LOWENSTEIN as "Chaim Lowenstein a/k/a Seth Lowenstein."

25. The PakMail Application also indicated that LOWENSTEIN submitted two forms of identification to PakMail in connection with his application. Specifically, LOWENSTEIN provided PakMail with a Florida driver's license in LOWENSTEIN's name and a business card in the name of "Chaim Lowenstein." The business card stated that "Chaim Lowenstein" was the CTO and COO of "WebCom247." The business card also contained a photograph of "Chaim Lowenstein." That photograph appears to be a photograph of LOWENSTEIN. PakMail retained copies of the two forms of identification provided by LOWENSTEIN.

26. A review of the defendant SETH LOWENSTEIN's criminal history reveals that he was convicted in 1993 in Nassau County, New York, First District Court, of Possession of a Forged Instrument in the Second Degree and Grand Larceny in the Third Degree. In connection with those convictions, he was sentenced to thirty days in prison and five years probation.

9

Wherefore, it is respectfully requested that a warrant be issued for defendant SETH LOWENSTEIN, also known as "Chaim Lowenstein," so that he may be dealt with according to law.

MARIA ALBRIGHT
United States Postal Inspector
United States Postal Inspection
Service

Sworn to before me this
$\mathfrak{I5}^{\text{th}}$ day of June 2010

$\overline{\text{GE}}$

10