LAW OFFICES OF
# JEFFREY LICHTMAN
750 LEXINGTON AVENUE
15TH FLOOR
NEW YORK, NEW YORK 10022
www.jeffreylichtman.com

JEFFREY LICHTMAN
JEFFREY EINHORN

PH: (212) 581-1001
FX: (212) 581-4999

February 3, 2012

**BY ECF**
Honorable Dora L. Irizarry
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: **United States v. Seth Lowenstein, 10 CR 583 (DLI)**

Dear Judge Irizarry:

### A.   INTRODUCTION

This letter is submitted on behalf of defendant Seth "Chaim" Lowenstein in anticipation of his March 6, 2012 sentencing and amends and replaces now-withdrawn July 1, 2011 sentencing submission which did not reflect the agreed-upon loss amount of $430,388.99. With this letter, the defendant respectfully requests a sentence which is simply "sufficient, but not greater than necessary to comply with the purposes" set forth in 18 U.S.C. § 3553(a)(2) due, in part, to the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

While there was previously some dispute as to the actual loss amount in this case - to which that parties have now agreed - there is no doubt that Mr. Lowenstein has consistently expressed his intention to plead guilty and take full responsibility for his crimes. Indeed, from the moment of his arrest on June 29, 2010 (as evidenced in his interview by Postal Inspectors) the defendant has admitted to creating fake invoices on his home computer and using them to submit fraudulent rebate claims to technology companies. See July 14, 2010 Memorandum of Interview, attached as Exhibit 1; see also defendant Lowenstein's February 8, 2011 guilty plea at T35-36 ("I cannot adequately express how sorry I am for what I have done"); June 1, 2011 Letter of Seth Lowenstein, attached as Exhibit 2 ("From the day I was arrested, the most sincere way I could think of to demonstrate my honest remorse was to immediately plead guilty and accept responsibility for my actions").

JEFFREY LICHTMAN
Hon. Dora L. Irizarry
United States District Judge
February 3, 2012
Page 2

### B. THE DEFENDANT'S GUILTY PLEA AND RESULTING GUIDELINES RANGE

On February 8, 2011, Mr. Lowenstein pled guilty to Count One of a three count indictment which charged him with Mail Fraud, in violation of 18 U.S.C. § 1341. See Presentence Investigation Report ("PSR") at ¶ 1. Specifically, Mr. Lowenstein admitted that between 1998 and 2008, he knowingly and intentionally devised a scheme to defraud companies that were selling electronic equipment and offering rebates for purchases. Id. Mr. Lowenstein obtained money from these companies through the use of false rebate requests, which were sent through the mail and reflected fictitious and nonexistent sales of products. Id. at ¶¶ 1, 5-14. As a result of this scheme, the government and the defendant have agreed that Mr. Lowenstein is responsible for a total loss in the amount of $430,388.99, reflecting a $222,106.95 loss to the Lexmark Corporation and $208,282.04 to Hewlett Packard / 3Com. See October 28, 2011 Ltr. of AUSA John Nowak.

As recounted in the PSR, pursuant to Guideline § 2B1.1(a)(1), the base offense level for Mail Fraud is seven. PSR at ¶ 22. With 14 levels added pursuant § 2B1.1(b)(2)(H) for a loss exceeding $400,000,[1] two levels added pursuant to § 2B1.1(b)(10)(C) due to the use of sophisticated means and three offense levels subtracted for acceptance of responsibility (§ 3E1.1), the total offense level is 20, carrying a sentencing range in the Criminal History Category II of 37-46 months.[2] See PSR at ¶¶ 21-30.

### C. RESTITUTION AND FORFEITURE

As of today, Mr. Lowenstein has already paid $534,286.77 towards the $579,530 preliminary forfeiture order set by the Court which reflects the forfeiture amount in the plea agreement. See Docket Sheet; May 11, 2011 Preliminary Forfeiture Order. Since the date of

---

[1] The PSR was completed before an agreement was reached concerning the total loss amount and incorrectly assigned a 16 level increase for a loss exceeding $1,000,000 instead of the 14 levels associated with the $430,388.99 attributable to the defendant. See October 28, 2011 Ltr. of AUSA John Nowak; U.S.S.G. § 2B1.1(b)(2)(H).

[2] The PSR's Criminal History calculation was challenged in the defendant's May 24, 2011 objections to the PSR. Specifically, the defendant objected to the assignment of a single criminal history point resulting from a 1992 conviction for aggravated harassment in which the defendant was sentenced to a conditional discharge. See PSR at ¶ 40. This additional point was responsible for his placement in the Criminal History Category II. While this objection is now withdrawn, should the Court find that Mr. Lowenstein is properly placed in Criminal History Category I, his Guidelines range would be 33-41 months.

JEFFREY LICHTMAN
Hon. Dora L. Irizarry
United States District Judge
February 3, 2012
Page 3

both the plea agreement and the preliminary forfeiture order, however, the actual loss amount attributable to the defendant has decreased considerably. With this in mind, counsel respectfully requests the opportunity to supplement this submission after discussing the impact of the decreased loss amount with AUSA Nowak, who is currently on trial and accordingly, unavailable.

    D.    **OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**

In addition to the loss calculation, the defendant previously objected to the assignment of an additional criminal history point which resulted in his placement in Criminal History Category II. As indicated, supra, the parties have agreed on the applicable loss amount in this case and the defendant's objection to the additional criminal history point is withdrawn. The defendant's remaining objections concerning his personal history were addressed in the first and second addendums to the PSR.

    E.    **THE DEFENDANT'S BACKGROUND –
          APPLICATION OF § 3553(a) FACTORS**

Since the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), the Sentencing Guidelines have been rendered advisory in nature, leaving sentences to the district court's discretion, guided by the Guidelines and the other factors contained within 18 U.S.C. § 3553(a) and bounded by any applicable statutory minimum and maximum. This section directs sentencing courts to "impose a sentence" that is "sufficient, but not greater than necessary, to comply with" the "need for the sentence" "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; [and] to protect the public from further crimes of the defendant ...." 18 U.S.C. §3553(a)(2) (emphasis supplied). In making this determination courts are to consider the "nature and circumstances of the offense and the history and characteristics of the defendant ...." 18 U.S.C. § 3553(a)(1).[3]

To that end, we have attached 40 character letters in support of this submission, a number reflecting the significant and meaningful role that Mr. Lowenstein has played in the lives of friends, colleagues and family. It would be impossible to include a letter from every individual

---

[3] In fashioning an appropriate sentence in this case and pursuant to § 3553(a)(2), the Court may also consider Mr. Lowenstein's lengthy period of strict house arrest - which began in August 2010 - as "punishment already imposed." United States v. Nagel, No. 10 CR 511 (JBW), 2011 WL 4025715, at *4 (E.D.N.Y. September 9, 2011); see also United States v. Mizrahi, No. 00 CR 960 (JBW), 2008 WL 3009983, at *2 (E.D.N.Y. June 16, 2008).

Mr. Lowenstein has positively influenced, and equally daunting to comment on every letter received.[4]  Still, the myriad letters on which we do remark paint a consistent picture of a respected and selfless friend.  Sadly, were it not for this sentencing, many of Mr. Lowenstein's good deeds probably would have gone unrecognized.

Family History

Seth "Chaim" Lowenstein was born in August of 1957 to a lower-middle class family in the Bronx.  PSR at ¶ 44.  His father, Marvin, worked as a sales manager for Gimpel Farms Dairy and his mother, Marlene, worked as a secretary for Mayor Edward Koch.  Id. at ¶ 46.  As the oldest of four boys, Mr. Lowenstein had a more complicated relationship with his parents than his younger siblings.  Id. at ¶ 48.  In particular, after his mother's second child was stillborn, Mr. Lowenstein's mother suffered from depression and the defendant was often sent to stay with his maternal grandparents, Esther and Moshe Krzeckower.  Id. at ¶ 47.  Mr. Lowenstein's younger brothers, born after this tragedy, were treated differently than the defendant - and Mr. Lowenstein was subject to mental abuse by his mother.  Id. at ¶ 48.

To make matters worse, Mr. Lowenstein also suffered from learning disabilities, including dyslexia, which went undiagnosed until adulthood despite his placement in special education classes.  Id.  This handicap exacerbated the problems in the defendant's relationship with his mother as she would become frustrated with his failure to understand and successfully complete schoolwork.  Id.  Perhaps as a result of his difficult childhood, Mr. Lowenstein is not particularly close to his family other than his elderly father, Marvin, for whom he is the primary care giver.  Id. at ¶ 46.  In his letter to the Court, Marvin Lowenstein confirms that he "need[s] [his] son ... to take care of [him]," further explaining:

> I am not well and suffer from many ailments such as diabetes, congestive heart failure, kidney problems, breathing issues, arthritis, etc.  I need Seth to oversee my quality of life and medical care. ...  I often call and speak with Seth especially if I am not feeling well.  Sometimes just hearing his voice makes me feel better and other times he has to get the EMT service over to my apartment in Howard Beach to check up on my well-being. ...

May 19, 2011 Letter of Marvin Lowenstein, attached as Exhibit 3.

---

[4] Additional letters are collected and attached as Exhibit 37.

JEFFREY LICHTMAN
Hon. Dora L. Irizarry
United States District Judge
February 3, 2012
Page 5

Mental and Physical Health

In addition to his dyslexia, Mr. Lowenstein was diagnosed with post-traumatic stress disorder in 1981 and suffers from panic attacks and anxiety. PSR at ¶ 58. In 1981 or 1982, the defendant was also diagnosed with tachycardia (a heart condition), and the PSR further notes that he suffers from sleep apnea and experiences occasional pain from a series of car accidents in the late 1980s and 1990s. Id. at ¶¶ 61-63.

Education and Work History

One of the defendant's most prominent characteristics is his consistent drive to better himself through education. In high school, he pursued a variety of higher education programs, including taking classes at Queens College. See PSR at ¶ 70. After his graduation, Mr. Lowenstein attended Hunter College for several years. Id. at ¶ 75. Although he intended to go to medical school, he left college when the stress of his parents' divorce proved too much to handle. He then started a business, but later returned to Baruch College in an attempt to finish his degree. Id. at ¶ 72. Since that time, Mr. Lowenstein has attended a variety of training and continuing education programs, including taking classes at Printing Industries of Metro New York, the University of Massachusetts, New York Institute of Finance, Apple Technical Services, Novell Technical Support, Microsoft University, Babson College (see Exhibit 4), and Cornell University. PSR at ¶¶ 67-73. He has studied accounting, human resources, computer technical support, and taken courses toward an MBA degree. Id. at ¶¶ 67, 71.

Even stronger than Mr. Lowenstein's drive towards self-improvement is his work ethic. Marvin Lowenstein writes that his son "wanted to help us as a family ...[and] at a very young age [] started to earn money. First, by opening a lemonade stand, next by starting a carnival with games and activities, getting a paper route then adding an additional paper route, mowing lawns, shoving snow and running errands." April 5, 2011 Letter of Marvin Lowenstein, attached as Exhibit 5.

Currently, the defendant is employed by WorkForce of America - a workforce planning and staffing company - where he holds the title Vice President / Operations Manager. PSR at ¶ 77. In this position, Mr. Lowenstein hires individuals for sales and consulting jobs and recruits others for staffing positions. Id. Prior to joining WorkForce of America, Mr. Lowenstein was the Executive Vice President and Chief Operating Officer at JobDiva, a position that he had to relinquish after he was confined to New York and New Jersey in the instant case and could no longer easily travel for work. Id. at ¶ 81. The defendant was also previously employed as the Chief Technology Officer and Chief Information Officer at WebCom 247 and has additionally held positions in accounting control technologies, accounting-based solutions, marketing, sales support, and in other technology-related fields. Id. at ¶ 82. Mr. Lowenstein ran WebCom 247's

JEFFREY LICHTMAN
   Hon. Dora L. Irizarry
   United States District Judge
   February 3, 2012
   Page 6

predecessor, Accounting Control Technologies, which also provided accounting-based solutions, and marketing and sales support for its clients. Id.

     This strong work ethic is universally hailed by the defendant's current and former colleagues, who describe him as a model employee who contributed to the work environment and projects in a positive way. Diya Obeid, a former colleague, writes:

> Seth was a true leader and led by example. Seth worked hard and long hours. Seth has no excuses[,] he was responsible and dedicated to excellence. He gained the respect of all of the company. Many felt comfortable with him to confide in him without feeling it would ever come back to haunt or hurt them. He is compassionate, intelligent, sensitive, caring, supportive, resourceful and creative. Seth used his skills to produce good results and often gave credit to those individuals who he felt did make a difference on the project or task. ...
>
> Seth is one of the greatest individuals who have ever worked for my 30 year old business which employs hundreds of people. Losing him as a valued employee not only devastated those who worked with him, but negatively affected the business itself. Seth has my continued support as he moves forward to put this behind him as I still respect him and do not see him as a menace to society.

April 6, 2011 Letter of Diya Obeid, attached as Exhibit 6. Likewise, former colleague Annette Raynor praises:

> He is very soft spoken, considerate and is willing to allow those that are more aggressive to get their point across. He is willing to understand the plight of others, he is willing to provide solutions and walk in the shoes of another. He is astute and pays close attention not just to words but to a person's overall feelings.

March 17, 2011 Letter of Annette Raynor, attached as Exhibit 7.

     Brian Goot echoes this praise, informing the Court:

> Immediately upon meeting him it was very obvious and apparent that he was extraordinary, trustworthy, professional and kind. Both

JEFFREY LICHTMAN
Hon. Dora L. Irizarry
United States District Judge
February 3, 2012
Page 7

> a professional and personal friendship quickly started. Other members of my team became friendly with him and professionals that directly reported to him or were hired by him both respected and appreciated his attention, leadership, honesty and shared experience daily. Seth had an immediate effect on developing his group and making people successful around him. Seth became a friend to everyone and a true advisor / helper.

March 20, 2011 Letter of Brian Goot, attached as Exhibit 8. Similarly, Sarah Goot writes:

> The first week Seth began to work in sales, we all knew he'd be a success. He was willing to share his innovative and creative ideas with everyone and most importantly, he made the company his priority and was determined to increase sales.
>
> The sales position at JobDiva had been a revolving door during my time at the company. However, Seth's good work ethic, combined with his friendly, kind personality made him a valuable asset to the company.

Letter of Sarah Goot, attached as Exhibit 9.

Jennifer Kelly remembers that "Mr. Lowenstein always exhibited a pleasant demeanor and was supportive of other industry partners, staffing company members, clients, board members, as well as myself." April 28, 2011 Letter of Jennifer Kelly, attached as Exhibit 10. Waseem Malek notes: "In the Information Technology industry, Seth is highly regarded based on his leadership vision, entrepreneurial acumen, understanding of the complex technologies, upright character, honest and fair dealings with business partners and IT leadership. And especially his contributions towards [the] CIO (Chief Information Officer) forum are very well recognized." March 28, 2011 Letter of Waseem Malek, attached as Exhibit 11.

<u>A Profound and Sincere Regret</u>

In addition to describing Mr. Lowenstein's strong work ethic, friends and colleagues universally recognize the defendant's profound and sincere regret for his criminal conduct. Len Scola, a business associate, writes: "Chaim has expressed an immense amount of remorse for his crime, and I believe he will be able to contribute back to society by using his gift in communication to teach others of his mistakes and the important lessons he learned along the way." Letter of Len Scola, attached as Exhibit 12.

JEFFREY LICHTMAN
Hon. Dora L. Irizarry
United States District Judge
February 3, 2012
Page 8

     Friend Ron Romano describes Mr. Lowenstein as "a man who deeply regrets the mistakes he has made. He has learned his lesson. ... [He] has a very strong support system. They will assist him in putting this situation behind him and making better choices." April 1, 2011 Letter of Ron Romano, attached as Exhibit 13. Erol Cobanoglu agrees: "While [he] has run afoul this time I know that he will continue to be accountable for his actions, seek whatever restitution demands the court makes and will strive to rehabilitate his standing with the court, his honor and society." May 5, 2011 Letter of Erol Cobanoglu, attached as Exhibit 14.

     Diya Obeid writes: "Seth has accepted responsibility for his conduct having pled guilty to the charge ... I have no doubt that this illegal behavior by him was a very unfortunate lapse in judgment. I have spoken to Seth about this and *he is extremely remorseful about his behavior*. Ex. 6 (emphasis supplied). Finally, George and Anna Fay write that "Chaim has told of many times how remorseful he feels and he is working on himself. Chaim wants to show the Court [] and himself that he is a changed person." April 28, 2011 Letter of George and Anna Fay, attached as Exhibit 15.

     <u>A Compassionate and Selfless Friend</u>

     Also highlighted in many of the letters is Mr. Lowenstein's compassionate and selfless nature. Bettina Goot, writes:

> My husband is a changed man since he developed a friendship with Chaim. ... I believe he feels Chaim is like a brother. His experience with Chaim has taught him how to be selfless, much due to the fact that Chaim is like that himself. I have tremendous respect for Chaim because he has affected our family in such a positive way.

April 6, 2011 Letter of Bettina Goot, attached as Exhibit 16. Eric Berry notes:

> Seth has shown compassion to others and I value him as a true friend. His kindness is well known and embraced within the community; he has helped so many unfortunate people. He reaches out to those in need and has the capacity to understand their needs. He has taken time out of his busy schedule for friends to take a true interest in our lives and the quality of our lives. Seth even has a funny side and can make one laugh aloud when it is sorely needed and feels good.
>
> Seth is an optimist and a quiet giant not looking for the honors but the results. Seth feels better knowing his fellow human beings are

JEFFREY LICHTMAN
Hon. Dora L. Irizarry
United States District Judge
February 3, 2012
Page 9

>doing better. I have seen Seth positively change the lives of people from all walks of life.

April 14, 2011 Letter of Eric R. Berry, attached as Exhibit 17.

Ellen Yerusalimsky remembers that Mr. Lowenstein helped her through a difficult time when she and Dianne Hillman, another colleague, were laid-off from their jobs:

>Seth was concerned about us and made sure to call us several times a day. Seth offered us anything he could provide information, references, money if we needed it, a place to drop by and have a cup of coffee, make copies of our resumes, a shoulder to lean or cry on, etc…

March 23, 2011 Letter of Ellen Yerushalimsky, attached as Exhibit 18; see also March 23, 2011 Letter of Dianne Hillman, attached as Exhibit 19 ("Seth never forgot his own difficult beginnings and his outreach to others is nothing less than stellar. I know he helped everyone who crossed his path directly or indirectly, visibly sometimes and hidden most of the time").

When Keith Sage-EL's father was seriously ill, Mr. Lowenstein was there to help in any way possible. April 5, 2011 Letter of Keith Sage-EL, attached as Exhibit 20. As Mr. Sage-EL remembers:

>My father became ill [due to] pancreatic cancer, and my family was in a tail-spin. His condition went from promising to end-stage in a matter of weeks. *Seth was a constant source of information, and comfort to me during that trying time*. He provided me with doctors and facilities that we could use and sources of education that helped us to understand the illness.

Id. (emphasis supplied). Norman Feigenbaum, a friend with severe medical problems, echoes this sentiment:

>In my state, you know a friend and a caring person and that describes Seth. He has over the years been the one I can count on to be there for me over my own family and longtime friends. I can write and write about times Seth has offered and actually assisted me with my many doctor visits, hospital visits and stays, and all the errands he ran to pick up groceries and other items when I was homebound recovering from surgery.

JEFFREY LICHTMAN
Hon. Dora L. Irizarry
United States District Judge
February 3, 2012
Page 10

March 20, 2011 Letter of Norman Feigenbaum, attached as Exhibit 21.

<u>A Record of Charity and Community Involvement</u>

Likely owing to his compassionate nature, Mr. Lowenstein also possesses an enviable record of charitable conduct and community involvement. Rabbi Yitzchak Rubin writes with examples:

> [I]f a poor person needed food, Chaim found out, then off to the market he went to purchase some food. If it was a homeless person, Chaim found out, then off he went calling local community organizations and NYC agencies to provide shelter. Meantime, Chaim had some places he knew would provide a few days of shelter and food before the others can help more long term.
>
> What is especially unique about Mr. Lowenstein is the fact that his involvement in helping other people does not end by his writing a check. With limited financial resources he managed to use whatever he had combined with unlimited brain power and his time. He will always get personally involved, even in the small details, to make sure that the problem is fully solved or to see the project through to its conclusion.
>
> I would like to point out just a few of the many stories that I am familiar with. When a teenager was in a debilitating accident and according to her insurance carrier, was not showing sufficient progress from intense therapy, the insurance company wanted to transfer her to a senior rehab center. Chaim made numerous calls until a (previously unavailable) bed was opened for her in the children's hospital long-term care facility.
>
> When a man in our community tragically lost is wife to a long battle with breast cancer, Chaim quietly helped him pay his mortgage in the tune of several thousands of dollars and other bills while he struggled in and out of jobs. When a woman in our community got divorced and needed a job to sustain her family, Chaim gave her a dignified position with a generous salary.

May 20, 2011 Letter of Rabbi Yitzchak Rubin, attached as Exhibit 22.

JEFFREY LICHTMAN
Hon. Dora L. Irizarry
United States District Judge
February 3, 2012
Page 11

      Lazar Rubin affirms that "Chaim is a person with an outstanding personality which is rarely seen and is a combination of kindness, generosity, wisdom and intelligence." April 7, 2011 Letter of Lazar Rubin, attached as Exhibit 23.  Mr. Rubin has further "witnessed numerous episodes in which Chaim was involved with helping out people and assisting them with great compassion in one way or another without even being asked to do so and without receiving recognition or publicity for his actions." Id.  Similarly, Waseem Malek notes that the defendant is:

> very charitable and open minded to help anyone in need.  I observed he is generous to everyone around him irrespective of socioeconomic, religious or ethnic background.  He is genuinely open to assist those in need of any kind of help, such as looking for a job, starting a small business or just need advice in day-to-day life challenges.

Ex. 11.

      Rifka Rubin notes the "countless favors and compassionate deeds emulating from Chaim and his constant readiness to be helpful to most anyone when the need arises." March 16, 2011 Letter of Rifka Rubin, attached as Exhibit 24.  Frank Scozzafava praises the defendant's "helpful, caring, compassionate and giving" nature. March 12, 2011 Letter of Frank Scozzafava, attached as Exhibit 25.   Similarly, Charles Enslin, writes:

> What I found unique about Chaim was his compassion and empathy for the employees that worked for him. I had asked Chaim if he could spend some time to provide some career advice for myself. With only a telephone conversation, he agreed to meet me in person.  He was very generous with his time - he spent almost three hours with me.

April 14, 2011 Letter of Charles Enslin, attached as Exhibit 26.

      Shloma Weiss writes that Mr. Lowenstein "made me feel welcome in his home before he even knew me personally.  He is a trustworthy person.  I could rely on him at any time." Letter of Shloma Weiss, attached as Exhibit 27.  Nathan Archer describes Mr. Lowenstein as "a good, caring man, a wonderful and kind human being that cares for his human brother and sisters no matter their race, color or religion." April 30, 2011 Letter of Nathan Archer, attached as Exhibit 28.

JEFFREY LICHTMAN
Hon. Dora L. Irizarry
United States District Judge
February 3, 2012
Page 12

    Perhaps due to his good nature and his assistance to them over the years, Mr. Lowenstein's friends plead for the defendant's mercy: Eric Berry writes

> Now that Seth's sentencing is at hand, I am so afraid for him and all those who depend on him. ... Seth has touched our hearts and our lives, and the lives of many people who have crossed paths with him. He has been an encouraging and inspiring person, and even though he has pled guilty to serious conduct, we cannot accept that this changes the compassionate person he is at his core. We have always believed that Seth is deeply compassionate, charitable, kind and we continue to believe that today.
>
> Unfortunately, people do make mistakes, but I understand that in determining a sentence the entire person and his life and actions are taken into account. In the case of Seth, respectfully please take the entire picture, inclusive of his personal growth, service to community and his willingness and capacity to help others into consideration.

Ex. 17.   Rifka Rubin writes:

> We are here for Chaim as his support system. The support includes myself, my husband the Rabbi and many fine members of the Congregation and community here & at large. Your Honor, you can hold us accountable and responsible to be there for Chaim.
>
> All I know is that me heart is heavy and that so many individuals, including outsiders of his immediate family, will be so negatively affected should Chaim (Seth) Lowenstein be taken out of society. People who go so far beyond the call of duty to help others - regardless of race, creed, age and gender - are all to rare in any time, and Chaim (Seth) Lowenstein is such a person.

Ex. 24.

    Rabbi Mendy Carlebach suggests that the Court consider letting Mr. Lowenstein perform community service, which "will make a positive impact on his life." April 29, 2011 Letter of Rabbi Mendy Carlebach attached as Exhibit 29. Rabbi Avrohom Czapnik pleads: "please be lenient with him and grant him probation, as he is ultimately a kind person and society could benefit from his giving nature." April 27, 2011 Letter of Rabbi Avrohom Czapnik, attached as

JEFFREY LICHTMAN
Hon. Dora L. Irizarry
United States District Judge
February 3, 2012
Page 13

Exhibit 30.   Steven Honig writes: "Your Honor, if you had the luxury of knowing Seth 'Chaim' Lowenstein as I have known him you would see how out of character this crime is and why Seth deserves leniency." March 20, 2011 Letter of Steven Honig, attached as Exhibit 31.

Simmy Kramarsky echoes: "I ask for your mercy and help for this special person." May 27, 2011 Letter of Simmy Kramarsky (Pultman), attached as Exhibit 32.  Saul Greene, whom Mr. Lowenstein assisted in becoming drug and alcohol free, writes: "I pray and ask you, Your Honor, with all of my heart and my soul please do not send him away. ... Please have mercy for all of us. On behalf of my wife, son and all those Chaim have helped have mercy." April 14, 2011 Letter of Saul Greene, attached as Exhibit 33.  Maier Feinberg writes:

> In short, your honor, I hope you will consider all the good that Chaim has done for so many. I was disappointed and shocked by his crime that he has expressed remorse for, they were so much out of character that I knew and saw. Please consider the great loss to the community by any possibly incarceration. ... I am sure he has already learned his lesson. Please allow your attribute of mercy to outweigh your attribute of justice.

April 14, 2011 Letter of Maier Feinberg, attached as Exhibit 34.

Mrs. Henry Frankel, wife of Rabbi Chaim Frankel, echoes this sentiment: "Chaim has become to my children an uncle.  Seldom do we find such a warm person beloved by all.  Please at this time extend your mercy on him + allow Chaim to continue visiting our home + extending his warmth on us." Letter of Mrs. Henry Frankel, attached as Exhibit 35.

Finally, Devoiry Gluck begs the Court to consider the following:

> Chaim has told me over and over how remorseful and sorry he is. Chaim just wants to rebuild himself and be a better person. Chaim has told me how he wants a chance to redeem himself and help others not make the mistake that he has made. I ask for your mercy for this good individual and allow him to rehabilitate himself rather than spending time in prison. Prisons do not have the time to make sure someone can better themselves rather it just is a place to keep someone from society.

May 25, 2011 Letter of Devoiry Gluck (Pultman), attached as Exhibit 36.

**JEFFREY LICHTMAN**

Hon. Dora L. Irizarry
United States District Judge
February 3, 2012
Page 14

### F.  CONCLUSION

Defendant Seth Lowenstein comes before this Court asking for mercy. A life that had so much promise and filled with hard work has been flushed down the drain due to so many poor choices. As the attached letters demonstrate, however, there is much good in Mr. Lowenstein and he has taken actions throughout his life to better his friends, colleagues and community. For all of these reasons, we ask for a merciful sentence which is simply "sufficient, but not greater than necessary to comply with the purposes" set forth in 18 U.S.C. § 3553(a)(2)."

Respectfully submitted,

Jeffrey Lichtman

cc:  John Nowak, Esq. (by email)
     Assistant United States Attorney

     Sindee Haasnoot (by email)
     Senior United States Probation Officer